**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



Russ Kendig
United States Bankruptcy Judge

**Dated: 05:03 PM March 22, 2013**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: | ) CHAPTER 7 |
| | ) |
| THEODORE MARK OLSON, | ) CASE NO. 11-63044 |
| | ) |
| Debtor. | ) ADV. NO. 11-6091 |
| _____ | ) |
| LISA M. BARBACCI, TRUSTEE, | ) JUDGE RUSS KENDIG |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) **MEMORANDUM OF OPINION** |
| THE MARSHALL BUCK | ) **(NOT FOR PUBLICATION)** |
| FINANCIAL GROUP, LLC, AND | ) |
| THEODORE MARK OLSON, | ) |
| | ) |
| Defendants. | ) |

Plaintiff Lisa M. Barbacci, the chapter 7 trustee ("Trustee") filed a complaint seeking to recover amounts paid, and amounts owed, to Defendant-debtor Theodore Mark Olson ("Debtor") under an agreement between Debtor and Defendant The Marshall Buck Financial Group ("Defendant"). Defendant and Debtor disagree that proceeds under the agreement are property of the estate. The court conducted a trial on December 4, 2012. Defendant and Plaintiff filed post-trial briefs following conclusion of the trial. The matter is now before the court for consideration.

The court has jurisdiction of this case under 28 U.S.C. § 1334 and the general order of reference entered in this district on July 16, 1984, now superseded by General Order 2012-7 dated April 4, 2012. In accordance with 28 U.S.C. § 1409, venue in this district and division is proper.

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E). The following constitutes the court's findings of fact and conclusions of law under Federal Rule of Bankruptcy Procedure 7052.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

## FACTS

In 1992, Debtor obtained a license and thereafter worked for nearly two decades as a stock broker and financial advisor. In early 2011, he was terminated by Wells Fargo Advisors, LLC and no longer licensed. Shortly after this, he entered into the following written referral agreement ("agreement") with Defendant:

> This is an agreement between Theodore Olson and Marshall Buck Financial Group, LLC. The Marshall Buck Financial Group, LLC intends to acquire clients and their assets by referral from Theodore Olson for $48,000.00 over a two year period. The $48,000.00 will be paid in monthly installments over the next two years beginning March 2011 to March 2013.

The agreement was drafted by Vicki J. Marshall ("Marshall"), a principal of Defendant. She and Debtor signed the agreement on March 14, 2011.

Through the agreement, Defendant hoped to obtain business from Debtor's connections, including his former Wells Fargo clients. Although Defendant did realize business from Debtor's referrals, ninety percent of Debtor's former clients remained at Wells Fargo. With one possible exception, it appears that all the clients Defendant obtained through Debtor's referrals were former Wells Fargo clients.

In addition to referrals, Debtor also provided information and advice to Defendant on annuity products.

Most of Debtor's referrals and consulting with Defendant were done by telephone. Although he was not required to go to the office, he did so occasionally. On average, he had contact with Defendant two to four times per month but was otherwise available. He was not Defendant's employee. In 2011, he received a 1099-MISC statement from Defendant.

Debtor filed a chapter 7 bankruptcy petition on September 23, 2011. At the time of filing, Debtor had received $13,000.00 under the agreement, leaving a balance of $35,000.00 due and owing. Debtor provided postpetition services under the agreement and continued to receive payments from Defendant after filing bankruptcy.

He initially did not schedule the agreement, the monies received, or the monies due in his bankruptcy paperwork. Later filed amendments, dated November 23, 2011, identify the monies received prepetition as income. Debtor did not list the agreement as an executory contract in his schedules.

**DISCUSSION**

Trustee seeks turnover of $35,000.00, the sum of the postpetition payments due under the agreement, as property of the estate. Under 11 U.S.C. § 541(a)(6), property of the estate includes "[p]roceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case." Trustee carries the burden of proof to establish her entitlement to turnover of estate property. In re Meyers, 616 F.3d 626 (7th Cir. 2010).

Defendant argues that Trustee is not entitled to the payments because they result from a personal service contract that is not property of the estate. Defendant references *Collier on Bankruptcy § 541.07(2)* in support. (Def.'s Trial Brief, § II, ECF No. 48.) The court must disagree. Collier's clearly states to the contrary:

> Under the Code, personal services contracts become property
> of the estate under section 541(a)(1) . . . If a contract entails
> postpetition services to be performed by a debtor, such contract,
> and all proceeds from it, are excluded from the estate in chapter
> 7 or 11 cases pursuant to section 541(a)(6).

5 Collier on Bankruptcy ¶ 541.06[2] at 541-39 (16th ed.) (footnotes omitted). The issue is whether the income owed under the agreement is excludable. The District Court of the Southern District of Indiana recognized that "11 U.S.C. (a)(6) is a narrow statute that only allows the debtor to exempt payment for post-petition services actually performed." Stinnett v. LaPlante (In re Stinnett), 321 B.R. 477, 482 (S.D. Ind. 2005). '[T]he decisive factor in determining whether post-petition income of the debtor will be deemed property of the estate is whether that income accrues from the post-petition services of the debtor.' Hunter v. U.S., 177 B.R. 260, 263 (Bankr. N.D. Ohio 1995) (citing In re Zahneis, 78 B.R. 504, 504 (Bankr. S.D. Ohio 1987) (quotation omitted)).

Trustee argues the payments are not excluded because they represent payments for prepetition referrals and are not the result of postpetition services. Under her view, although the payments were stretched over two years, Debtor's obligations under the agreement were not, leaving only collection of the payments. Defendant did not address this specific question.

Trustee recognized that "[Debtor] and Marshall testified that he was still under a continuing obligation to provide referrals in exchange for the payments he is receiving under the Agreement." (Pl.'s Post-Trial Brief, p. 3, ECF. No. 60.) Trustee wants the court to look at other facts, such as Debtor's failure to schedule the agreement as an executory contract and the length of time since Debtor's last referral, as evidence that Debtor is not being paid for postpetition services.

Many courts employ a strict, literal interpretation and require affirmative action by the debtor in order for the exclusion to apply. *See, e.g.,* In re Prince, 85 F.3d 314 (7th Cir. 1996) (payments for goodwill of business were not personal earnings); Johnson v. Taxel (In re Johnson), 178 B.R. 216, 220 (B.A.P. 9th Cir. 1995) ("refraining from the performance of services is not the performance of services"); Stinnett, 321 B.R. 477, 482 (declining to extend to disability

payments); In re Carson, 82 B.R. 847 (Bankr. S.D. Ohio 1987) (exclusion doesn't apply to lost future wages award). "Typically, funds are not subject to the post petition (sic) services exclusion, unless they accrue as the result of actual services performed post-petition, or are conditioned upon the performance of continued services post petition (sic)." In re LaSpina, 304 B.R. 814, 819 (Bankr. S.D. Ohio 2004)(citation omitted)). This rationale also leads courts to refuse to find that obligations to forego activity constitute a provision of services. *See, e.g.,* Andrews v. The Riggs Nat'l Bank of Washington, D.C. (In re Andrews), 80 F.3d 906 (4th Cir. 1996) (payments under a noncompete agreement are not for services performed); Johnson, 178 B.R. 216 (noncompete agreement).

Here, Debtor is being paid for making referrals. Marshall testified that she continued to pay Debtor because he continued to help her and affirmatively stated that he continued to make referrals. Marshall was credible and her testimony was not challenged. Debtor also indicated that he maintained a relationship with Defendant postpetition, corroborating Marshall's testimony. His testimony was also unchallenged. In light of their combined testimony, the court concludes that Debtor was performing postpetition services. The evidence is thin, but sufficient. The bulk of trial testimony was not relevant to the dispositive factual issue.

The court finds that the postpetition payments were for actual services performed after Debtor's bankruptcy filing and therefore are excluded from property of the estate under 11 U.S.C. § 541(a)(6). Trustee is therefore not entitled to turnover of the postpetition payments.

An order will be entered contemporaneously with this opinion.

#       #       #

**Service List:**

Michael J Moran
Gibson & Lowry
PO Box 535
234 Portage Trail
Cuyahoga Falls, OH 44222

Morris H Laatsch
Kaffen & Zimmerman
520 South Main Street
Suite 500
Akron, OH 44311

Timothy P. Assaf
12 East Exchange Street, Fifth Floor
Akron, OH 44308